UNITED STATES of America, Plaintiff,

v.

$144,600.00, UNITED STATES CURRENCY, Defendant.

No. 89–379–Civ–J–14.

United States District Court,
M.D. Florida,
Jacksonville Division.

Feb. 26, 1991.

Paul I. Perez, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff.

Floyd Mincey, Dublin, Ga., for defendant.

## OPINION AND ORDER

SUSAN H. BLACK, Chief Judge.

This case is before the Court on the Motion of United States of America for Summary Judgment, filed on April 30, 1990. Gregory Gordon [hereinafter "Claimant"] filed a response in opposition on May 30, 1990.[1] On August 14, 1990, the Claimant filed a supplemental response. On November 6, 1990, the Government filed a Notice of Supplemental Authority.

This case involves a civil forfeiture action brought by the Government pursuant to 21 U.S.C. § 881(a)(6), as a result of the following undisputed facts. At approximately 9:20 a.m., on March 24, 1989, Officer Renee Robbins, of the Jacksonville International Airport Police, observed the Claimant seated inside the terminal area of the Jacksonville International Airport [hereinafter "JIA"]. The Claimant was not engaged in illegal activity at this time. Officer Robbins noted that the Claimant matched the physical description of an individual observed one week earlier carrying a large amount of currency through the JIA terminal. An attendant at one of the JIA security checkpoints informed Officer Robbins that the Claimant was carrying a large amount of currency in his carry-on bag.

Special Agent Mark Baughman, of the Drug Enforcement Administration [hereinafter "DEA"], and Officer Robbins approached the Claimant, and, after identifying themselves, were informed by the Claimant that he had paid cash for a one-way ticket to Miami, Florida. After further questioning, the agents informed the Claimant that on the basis of the information provided, they were seizing the currency. The defendant currency was counted

---

1. Gordon's standing as a claimant in this case is not contested.

and a receipt was furnished to the Claimant.

In its motion for summary judgment, the Government contends that the undisputed facts show that there is probable cause to believe that the defendant currency is subject to forfeiture for violation of federal drug laws. The Government further contends that the Claimant has not provided any evidence to refute the Government's showing of probable cause or to establish an innocent owner defense. Therefore, the Government concludes that it is entitled to summary judgment entered in its favor.

In his response, the Claimant alleges that the arrest and seizure of the defendant currency was unlawful, without due process, and without probable cause. The Claimant further alleges that the Government has failed to meet its burden of establishing that a substantial connection exists between the defendant currency and illegal drug activity. The Claimant contends that he was taking the $144,600.00 to Miami to invest in a shopping center being developed by an individual called "Four Speed." Lastly, the Claimant alleges that he has presented sufficient evidence to show that he is the innocent owner of the defendant currency.[2] Thus, the Claimant contends that there are genuine issues of material fact existing which preclude the Court from granting the Government's motion.

## I. STANDARD OF REVIEW FOR MOTION FOR SUMMARY JUDGMENT

A district court's review of a case on a motion for summary judgment is governed by Fed.R.Civ.P. 56. A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the district court that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Rule 56 permits the moving party to discharge its burden with or without supporting affidavits

and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has so discharged its burden, the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

The district court must enter summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552; Fed.R. Civ.P. 56(c). *See also Reflectone, Inc. v. Farrand Optical Co., Inc.*, 862 F.2d 841, 843–44 (11th Cir.1989). Whether or not the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law, requires the court to draw inferences from the evidence as viewed in the light most favorable to the nonmoving party, and to resolve all reasonable doubts in that party's favor. *See Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989). The Eleventh Circuit Court of Appeals explained the reasonableness standard in *WSB–TV v. Lee:*

> In deciding whether an inference is reasonable, the court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." *Southway Theatres, Inc. v. Georgia Theatre Co.*, 672 F.2d 485, 493 (5th Cir. Unit B 1982). The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

**2.** Gordon has produced sworn testimony provided during his deposition and has filed an affidavit.

*WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

Rule 56(c) requires the district court to deny a motion for summary judgment if the court finds that there exists a genuine issue for trial. What constitutes a "genuine issue for trial" was addressed by the Supreme Court in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Anderson,* the Court stated that "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court further stated that the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

## II. ANALYSIS

The Court will first consider the Claimant's contention that an illegal arrest and seizure occurred. The Court will then determine whether the Government has established probable cause to believe that the defendant currency is substantially connected to illegal drug activity. Lastly, the Court will address the Claimant's explanation for the defendant currency.

## A. INVALID SEARCH & SEIZURE OF DEFENDANT CURRENCY

 Unquestionably, evidence derived from a search which violated the fourth amendment is inadmissible in a forfeiture proceeding. *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 702, 85 S.Ct. 1246, 1251, 14 L.Ed.2d 170 (1965). However, the fact that property was seized in violation of the fourth amendment will not immunize it from forfeiture. The forfeiture action can proceed if the government can show probable cause with untainted evidence; however, the item seized is not admissible into evidence. *Vance v. United States,* 676 F.2d 183, 188 (5th Cir.1982). *See, e.g., United States v. One 1985 Cad-*

*illac Seville,* 866 F.2d 1142, 1146 (9th Cir. 1989); *United States v. U.S. Currency $31,828,* 760 F.2d 228, 230 (8th Cir.1985); *United States v. "Monkey",* 725 F.2d 1007 (5th Cir.1984).

The Court's analysis in Part B, *supra,* will assume for the purposes of this motion that the defendant currency was illegally seized, and, therefore, is tainted evidence. Accordingly, the Court will not factor into its analysis any inferences from the amount of money itself. Rather, the Court will focus solely upon untainted evidence.

## B. GOVERNMENT'S BURDEN

Pursuant to 21 U.S.C. § 881(a)(6), the Government "must establish probable cause to believe that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance." *United States v. A Single Family Residence & Real Property,* 803 F.2d 625, 628 (11th Cir.1986). "The government need not trace the cash to specific transactions, or actually prove by a preponderance of evidence a substantial connection to drug dealing. The government must merely furnish probable cause, i.e., reasonable grounds to believe that a substantial connection exists between the money seized and [illegal drug activity]." *United States v. $41,305.00 in Currency & Traveler's Checks,* 802 F.2d 1339, 1343 (11th Cir.1986). "Probable cause must be judged not with clinical detachment but with a common sense view to the realities of normal life." *Wilson v. Attaway,* 757 F.2d 1227; 1235 (11th Cir.1985).

 Probable cause may be established by circumstantial evidence and hearsay testimony. *A Single Family Residence,* 803 F.2d at 629 n. 2 (hearsay testimony); *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars ($364,960.00) in United States Currency,* 661 F.2d 319, 325 (5th Cir. Unit B 1981) (circumstantial evidence). Furthermore, evidence which was discovered after the actual seizure of the money may be used to establish probable cause. *$41,305.00,* 802 F.2d at 1343.

■ Applying the law to the facts of this case, the Court finds that the Government has met its burden in establishing that it has probable cause to believe that a substantial connection exists between the money seized and illegal drug activity. Of foremost importance, and undisputed, is the fact that on June 8, 1990, in the Superior Court of Lowndes County, Georgia, the Claimant was found guilty of cocaine trafficking and was sentenced to thirty years imprisonment.[3] Additional undisputed evidence in support of probable cause is: (1) the Claimant and two additional co-defendants were previously arrested in Miami, Florida, for attempting to purchase approximately six kilograms of cocaine from an undercover DEA agent; subsequent to the arrest, $93,000.00, a M–16 rifle, and a 9mm pistol were seized;[4] (2) the Claimant was arrested on May 24, 1989, in Valdosta, Georgia, for cocaine trafficking, at which time $1,134.00 was seized; (3) the Metro–Dade Police Department has recovered several stolen semi-tractor trailers from N.A.B. Trucking Corporation, a company of which the individual whom the Claimant called "Four Speed" is the owner;[5] (4) the Metro–Dade Police Department has documented that "Four Speed" has used N.A.B. Trucking Corporation semi-trucks to transport large amounts of cocaine and marijuana; and (5) the DEA has identified "Four Speed" as a supplier of cocaine in the Atlanta, Georgia, area. Furthermore, the Court notes that the Claimant paid cash for a one-way ticket to Miami, Florida, "a center for drug-smuggling and money-laundering." *United States v. Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d 895, 904 (11th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986).

## C. CLAIMANT'S BURDEN

■ If the Government successfully demonstrates the existence of probable cause, "the burden of proof in a civil forfeiture proceeding shifts to the claimant to establish by a preponderance of the evidence that the property is not subject to forfeiture." *A Single Family Residence,* 803 F.2d at 629. A claimant meets "this burden either by rebutting the Government's evidence that the [p]roperty was proceeds of illegal drug activities or by showing that it was an innocent owner who did not know of the [p]roperty's connection with drug sales." *Id.* Furthermore, when "the government has presented evidence of an illegal source, the claimant must do more than show the existence of possible legitimate sources of cash." *$41,305.00,* 802 F.2d at 1345. The claimant must "show by a preponderance of the evidence an alternative source for the funds." *Id.*

■ The Claimant contends that he is an innocent owner of the money. The Claim-

**3.** The Court finds the Second Circuit Court of Appeals' decision in *United States v. All Right, Title & Interest in Real Property and Building,* 901 F.2d 288 (2nd Cir.1990), to be persuasive authority. The Court agrees with the Second Circuit's conclusion that 21 U.S.C. § 881(a) "does not require a conviction under the federal narcotics laws as a basis for forfeiture." 901 F.2d at 292.

**4.** According to Gordon, the City of North Bay Village Police Department retained $83,000.00 and returned $10,000.00 back to him. Deposition of Gregory Gordon at 17, filed on April 30, 1990.

**5.** Special Agent Mark R. Baughman stated in his affidavit that initially Gordon informed him that the defendant currency was his. Deposition of United States of America for Summary Judgment, Exhibit A, Affidavit of Mark R. Baughman at 3, filed on April 30, 1990. Baugh-

man stated that Gordon then informed him that the defendant currency belonged to "Four Speed" and that "Four Speed" had given him the money to buy a semi-tractor trailer in Atlanta, Georgia. *Id.* at 4. Baughman stated that Gordon displayed little knowledge regarding semi-tractor trailers, and that Gordon was extremely vague on what kind of truck Gordon intended on purchasing for "Four Speed." *Id.* at 4–5. In his deposition, Gordon stated that he did not remember telling Baughman any of the aforementioned details. Deposition of Gregory Gordon at 30, filed on April 30, 1990. He further testified that the aforementioned details "could have happened." *Id.* However, in his affidavit, Gordon states that he explained that the money was his and that he was going to Miami "to invest the money in a shopping center being developed by the owner of N.A.B. Trucking Company." Claimant's Response in Opposition to Plaintiff's Motion for Summary Judgement [sic], Affidavit at 3, filed on May 30, 1990.

ant claims that he accumulated the $144,-600.00 from gambling winnings, an inheritance of $8,000.00 from his aunt, an $8,000.00 check from his father, and at least $30,000.00 he found in his aunt's house. Deposition of Gregory Gordon at 32–36, filed on April 31, 1990. The Claimant alleges that he does not know the actual total of the money he found in the attic of his aunt's house because he stopped counting after $30,000.00. *Id.* at 33. None of these allegations are supported by any evidence other than the Claimant's own statements provided in his deposition and affidavit.

The Court finds that the Claimant has not carried his burden of proving that the defendant currency is not connected with illegal drug activities. His evidence is not "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Claimant's evidence does not "present[ ] a sufficient disagreement to require submission to a jury." *Id.* at 251–52, 106 S.Ct. at 2512. Rather, the evidence is so one-sided that the Government must prevail as a matter of law.

The Claimant's tax records clearly contradict the Claimant's undocumented allegations. For the tax years 1985 through 1988, the Claimant reported income of less than $50,000.00, including unemployment compensation. Deposition of Gregory Gordon, Plaintiff's Exhibits 3–6, filed on April 30, 1990. Additionally, there is no record of the $30,000.00 found in his aunt's attic in any of the Claimant's tax returns. The Claimant has neither produced the cancelled $8,000.00 check from his father nor provided any documentation of his inheritance from his aunt's estate.

■ Furthermore, when questioned during his deposition, the Claimant invoked his fifth amendment privilege against self-in-crimination and refused to answer any questions regarding his gambling history.[6] The Claimant has provided absolutely no evidence to support his allegation that he has earned substantial amounts of money through his gambling activities. This conclusion is especially apparent in light of the Claimant's criminal history and past experience with seizures of currency.

## III. CONCLUSION

The Court finds that the Government has met its burden in establishing that it has probable cause to believe that a substantial connection exists between the money seized and illegal drug activity. The Court finds that the Claimant has not met his burden of establishing that the defendant currency is not subject to forfeiture. Furthermore, even assuming that the defendant currency was illegally arrested and seized, the Court finds that its conclusion that the defendant currency should be forfeited is not altered. The Court's conclusion is based solely upon the untainted evidence. Therefore, the Court will grant the Motion of United States of America for Summary Judgment, filed on April 30, 1990, and order forfeiture of the defendant currency.

Accordingly, it is

ORDERED that the Motion of United States of America for Summary Judgment, filed on April 30, 1990, is granted; the defendant currency is forfeited.

DONE AND ORDERED.

---

**6.** A blanket assertion of the fifth amendment privilege does not relieve a claimant from meeting his burden of production under Fed.R.Civ.P. 56(c). *United States v. Little Al,* 712 F.2d 133, 135–36 (5th Cir.1983). *See also, United States v. $250,000 in United States Currency,* 808 F.2d 895, 901 (1st Cir.1987) ("blanket assertion of the privilege is no defense to the forfeiture proceeding"); *United States v. U.S. Currency,* 626 F.2d 11, 16 (6th Cir.) (claimant's fifth amendment privilege does not compel dismissal of forfeiture action), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980).