UNITED STATES of America, Plaintiff,

v.

ONE PARCEL PROPERTY LOCATED AT 427 & 429 HALL STREET, MONTGOMERY, MONTGOMERY COUNTY, ALABAMA, a/k/a G & G Grocery, with all Appurtenances and Improvements Thereon, Defendant.

No. CV–91–A–1302–N.

United States District Court,
M.D. Alabama, N.D.

Jan. 21, 1994.

John T. Harmon, Montgomery, AL, for plaintiff.

Charles Law, Montgomery, AL, for defendant.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

### I. Introduction

The United States of America ("the Government") filed this civil action *in rem* for forfeiture of Claimant George T. Jenkins' ("Jenkins") real property, which includes a grocery store, located at 427 and 429 Hall Street, Montgomery, Alabama on October 29, 1991.[1] It seeks forfeiture pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 881(a)(7). The Government contends that the property was used or intended to be used to commit or to facilitate the commission of violations of federal drug laws. *See* 21 U.S.C. § 801 *et seq.* It has properly invoked this court's jurisdiction pursuant to 28 U.S.C. §§ 1345 & 1355.

The court conducted a bench trial on November 24, 1993. Jenkins contends that forfeiture is inappropriate because (1) the police did not have probable cause for a search warrant, (2) he was an "innocent owner," and (3) it would violate the Eighth Amendment's Excessive Fines Clause. The court will address each of these contentions in turn.

After consideration of the pleadings, the testimony of the witnesses, and the exhibits, the court makes the following findings of fact and conclusions of law.[2]

### II. Findings of Fact

In August 1991, Agent McKitt, then-assigned to the District Attorney's Montgomery Operation Drugs Task Force ("MOD"), received a telephone call from a confidential informant ("CI"), who informed him that illegal narcotics were being sold at the G & G Grocery store on Hall Street ("G & G"). On August 20, 1991, Agent McKitt met the CI at MOD headquarters, thoroughly searched him to confirm that he did not have any narcotics or money already on his person, and briefed him on the operation MOD intended to conduct. Agents McKitt and Trammer and the CI then proceeded to the corner of Hall Street from where the front of G & G was visible. The agents gave the CI $25 in marked bills to carry out a controlled buy of narcotics. They observed the CI enter G & G and return after five minutes without coming into physical contact with anyone after leaving the store.

Once back in the agents' automobile, the CI produced a one-inch by one-inch square "zip-loc" clear bag containing a white powder-like substance. The CI described Jenkins as the person who had sold him the bag. He stated that Jenkins had the bag in his pants pocket. Subsequently, the agents field tested the substance, identified it as five-tenths of a gram of cocaine, and destroyed it.

On or about August 29, 1991, Agent McKitt and the CI returned to the corner of Hall Street and conducted a second controlled buy with exactly the same preparation and in precisely the same manner as the first. Once again, the CI returned with a "zip-loc" clear bag containing a white powder-like substance. The CI again identified Jenkins as the person who sold him the substance and stated that he produced the bag from his pants pocket. The substance was field tested, identified as five-tenths of a gram of cocaine, and destroyed.

---

1. The legal description of the defendant real property sought to be forfeited is as follows:

   Lot D, according to the Plat of a Subdivision of the property of Fred Cramton, Jr., being Lots R–13, R–14, R–15A on the East side of Hall Street and the North side of Yougene Street, as the same appears of record in the office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 13, at Page 150, less and except therefrom that certain part of Lot D conveyed by Fred J. Cramton and wife, Gladys A. Cramton, to The Housing Authority of the City of Montgomery, Alabama, by Deed dated September 8, 1956, filed for record September 10, 1956, and recorded in Deed Book 423, at Page 148, in the Probate Office aforesaid. Plaintiff's Trial Exhibit ("Pl.Tr.Ex.") # 14 at 1. It is valued at approximately $60–65,000.

2. At the trial, the court heard the testimony of Jenkins, Stephen McKitt ("Agent McKitt"), of the Montgomery County Sheriff's Department ("MCSD"), Blake Trammer ("Agent Trammer"), an investigator in the Montgomery District Attorney's Office, Norman Jean Pettus ("Agent Pettus"), of the MCSD, Jamie D. King ("Agent King"), of the MCSD and Arnold Mitchell ("Mitchell"), of the Alabama Department of Forensic Sciences.

Based on the information acquired from the two controlled buys, Agent McKitt obtained a search warrant from the Montgomery Municipal Court, which authorized the search of G & G and any vehicles on the premises. *See* Pl.Tr.Exs. # 5 & # 6.

At 4:00 p.m., on August 30, 1991, Agents McKitt, Trammer and King of MOD and Agents Pettus and Bert Bodiford of the MCSD executed the search warrant. First, Agent McKitt entered G & G, identified Jenkins, confirmed that he was in fact George T. Jenkins, the owner of G & G, and showed him the search warrant. The other agents then entered and secured the premises. This process included informing Jenkins of his *Miranda* rights, and searching his person, the entire store, and his Chevrolet Blazer, which was parked in front of the store.

The agents discovered seven one-inch by one-inch "zip-loc" clear bags containing a white powder-like substance and $45 in Jenkins' pockets; $800 in his wallet; $108 and .38 caliber bullets on a shelf behind the counter; and three hand-rolled cigarettes and a .38 caliber pistol in Jenkins' Chevrolet Blazer. The cigarettes were in a coat pocket. *See* Pl.Tr.Ex. # 7. Including the money from the cash register, the agents discovered a total of $1,764 during the search. The seven bags were identical to the two bags of cocaine the CI purchased.[3]

The agents arrested Jenkins for the unlawful possession of controlled substances. Subsequently, Mitchell's tests identified the bags taken from Jenkins' pockets as containing a total of three grams of cocaine and the cigarettes found in Jenkins' Blazer as containing six-tenths of a gram of marijuana. *See* Pl.Tr. Ex. # 13.[4] On September 14, 1992, Jenkins pled guilty in State court to the unlawful possession of cocaine, a Class C felony with a minimum sentence of 1 year and a day and forfeited the $1,764 to the State of Alabama. *See* Pl.Tr.Ex. # 15 at 2–7. The charge of unlawful possession of marijuana was dropped as part of the plea agreement. *Id.* at 2.

At trial, Jenkins denied ever selling illegal drugs. With respect to the seven "zip-loc" clear bags, he testified that he found them wrapped in tissue on the steps of his store while he was preparing to open for business at 7:30 a.m. on August 30, 1991. He stated that he put the tissue in his pocket, but was not certain that it contained drugs.[5] He further testified that he has often had to run-off people who try to conduct drug sales in front of his store and that it is not uncommon for them to drop narcotics on G & G's steps. He testified that he had called the police on prior occasions when that happened, but he had not called the police on this occasion before law enforcement officers entered his store at around 4:00 p.m.

With regards to the pistol in his vehicle, he stated that he had a license for it and that he used it to protect the store. He also testified that the marijuana cigarettes belonged to a friend, who left them with him over a year ago. Finally, he emphasized that he pled guilty only to possession of cocaine and not to selling it.

In response to Jenkins' Eighth Amendment Excessive Fines Clause argument, Agent McKitt testified that G & G is only one-tenth of a mile away from the basketball courts of a junior high school. This fact was undisputed.

## II. Conclusions of Law

### A. Probable Cause For A Search Warrant

■ Jenkins contends that "based on the fact that this [CI] had not been used in the past, there is no way that this [CI] could be deemed reliable." Post–Trial Brief of Claimant George Thomas Jenkins at 2. The court finds this contention to be meritless. In *United States v. Fluker*, 543 F.2d 709, 714 (9th Cir.1976), the Ninth Circuit recognized that "[t]his argument carries little weight ... when one considers that for every informant

---

**3.** Agent McKitt testified that the bags were identical to those used by drug dealers.

**4.** At trial, Jenkins stipulated that Mitchell is an expert on drugs analysis.

**5.** On cross-examination Jenkins testified that he did know that the bags contained cocaine. Moreover, during his guilty plea in State court, he also stated that he knew that bags in his pockets contained cocaine. *See* Pl.Tr.Ex. # 15 at 7.

there must be a first time to inform." *See Bennett v. City of Grand Prairie,* 883 F.2d 400, 409–10 (5th Cir.1989); *United States v. Phillips.,* 727 F.2d 392, 397 (5th Cir.1984); *United States v. Kent,* 691 F.2d 1376, 1379 (11th Cir.1982); *United States v. Darensbourg,* 520 F.2d 985, 988 (5th Cir.1975).[6]

Nevertheless, the court will interpret Jenkins' argument to be a claim that probable cause did not exist for the issuance of the search warrant by the Montgomery Municipal Court. *Cf.* Answer to the Complaint for Forfeiture at 2.[7]

■ In *Katz v. United States,* the Supreme Court articulated the basic constitutional rule that warrantless searches "are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The warrant requirement requires that an impartial judicial officer assess whether the police have probable cause to make an arrest, to conduct a search, or to seize evidence. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. *See also Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 326–28, 99 S.Ct. 2319, 2324–25, 60 L.Ed.2d 920 (1979); *Shadwick v. City of Tampa,* 407 U.S. 345, 350, 92 S.Ct. 2119, 2122–23, 32 L.Ed.2d 783 (1972); *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *Katz,* 389 U.S. at 357, 88 S.Ct. at 514. The evidence presented must provide the judicial officer with a substantial basis for the determination that probable cause exists. *Gates,* 462 U.S. at 239, 103 S.Ct. at 2332.

The Supreme Court has defined probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332. In *Gates,* the Court approved a "totality of the circumstances" approach to determining when information provided by an informant is sufficient to create probable cause. *Id.* at 233, 103 S.Ct. at 2329; *see also United States v. Gonzalez,* 969 F.2d 999, 1002 (11th Cir.1992) (citations omitted). The *Gates* Court decided that, while an informant's "veracity," "reliability," and "basis of knowledge" are relevant factors in probable cause analysis, corroboration by independent police work is of significant value. 462 U.S. at 230, 103 S.Ct. at 2328.

■ In the instant case, although the affidavit in support of the search warrant application did not recite the CI's basis of knowledge for the information provided, it did relate the detailed corroboration of the information by Agents McKitt and Trammer. Specifically, the affidavit reviewed the process by which Agents McKitt and Trammer and the CI had carried out two controlled buys that had produced two "zip-loc" clear bags of a substance which field tests revealed to be cocaine.[8] The court is unpersuaded by Jenkins' argument that the field tests should not be accepted as reliable. While a different question might be presented if Jenkins were being prosecuted for drug possession or sale based on the results of a field test, the court considers the results of two separate field tests under the facts and circumstances

6. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

7. The court recognizes that in its review it must accord great deference to the judgment of the court that issued the warrant. *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983).

8. Jenkins' contention is identical to that of the appellants in *Fluker.* The appellants in that case argued that there was no probable cause for the issuance of the search warrant because the confidential informant could not be reliable since the affidavit in support of the application did not recite any previous contacts between the police

and the informer. 543 F.2d at 714. The Ninth Circuit held that probable cause existed and the affidavit was sufficient because there was sufficient corroborating evidence. *Id.* Moreover, it did so under the then controlling *Aguilar–Spinelli* test which is more demanding than the *Gates* "totality of the circumstances" test. Specifically, the affidavit in *Fluker* recited that the agent observed the informant enter and leave one of the appellants' apartments, immediately thereafter producing a balloon filled with a powdery brown substance which proved to be heroin and which the informant stated had been provided to her by one of the appellants. *Id.* Clearly, Agent McKitt's affidavit provided more detailed corroborating evidence than that provided by the agents in *Fluker.*

of this case to be entirely sufficient to establish the reliability of the informant. The court concludes that based on the information within the affidavit in support of the warrant application there was a fair probability that contraband or evidence of a crime would be found at G & G. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332; *see Fluker,* 543 F.2d at 714; *cf. Gonzalez,* 969 F.2d at 1003.

Accordingly, the court finds that there was probable cause to support the issuance of the search warrant.

### B. Civil Forfeiture Law— 21 U.S.C. § 881(a)(7)

21 U.S.C. § 881(a)(7) requires the forfeiture of any real property and improvements thereon when there is probable cause to believe that the property was used to facilitate a violation of 21 U.S.C. § 801 *et seq.,* punishable by more than one year.[9] The Government bears the initial burden of establishing that probable cause exists for the forfeiture of the defendant property. *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1440 (11th Cir.1991) (en banc).

■ To demonstrate "probable cause" for forfeiture purposes, the Government must present evidence furnishing a reasonable ground for belief that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance. *See United States v. $121,100.00 in U.S. Currency,* 999 F.2d 1503, 1505 (11th Cir.1993) (citations and quotation marks omitted); *United States v. Real Property and Residence at 3097 S.W. 111th Ave.,* 921 F.2d 1551, 1556 n. 8. (11th Cir.1991) (citations omitted).[10] A reasonable ground for belief is less than prima facie proof but more than mere suspicion. *$121,100.00 in U.S. Currency,* 999 F.2d at 1505 (citations omitted); *One Single Family Residence at 15603 85th Ave. N.,* 933 F.2d at 979.

■ It is well established both in the law of forfeiture and in other areas of the law, that the probable cause inquiry is a flexible one in which the court must consider the " 'totality of the circumstances.' " *$121,100.00 in U.S. Currency,* 999 F.2d at 1505 (citations omitted). *See also United States v. Single Family Residence,* 803 F.2d 625, 628 (11th Cir.1986). Probable cause may be established by circumstantial evidence and hearsay testimony. *Single Family Residence,* 803 F.2d at 629 n. 2; *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars etc.,* 661 F.2d 319,

---

**9.** Section 881(a)(7) states:

> The following shall be subject to forfeiture to the United States ...
> All real property, ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

**10.** Presently, the United States Courts of Appeals disagree on what the government must prove to establish probable cause for forfeiture of real property under § 881(a)(7). The First, Fourth and Eighth Circuits hold that the government must prove that the real property had a "substantial connection" to the illegal activity. *United States v. Parcel of Land and Residence at 28 Emery St.,* 914 F.2d 1, 3–4 (1st Cir.1990); *United States v. One Parcel of Real Estate Located etc.,* 906 F.2d 110, 112–13 (4th Cir.1990); *United States v. Premises Known as 3639–2nd St. N.E.,* 869 F.2d 1093, 1096–97 (8th Cir.1989). The Second and Seventh Circuits, on the other hand, have rejected the substantial connection test. The former merely requires the government demonstrate only a "nexus" between the seized property and the illegal activity. *United States v. Daccarett,* 6 F.3d 37, 51 (2d Cir.1993). The latter requires the government to show only that the real property had "more than an incidental or fortuitous connection" to the crime. *United States v. One Parcel of Real Estate,* 903 F.2d 490, 493–94 (7th Cir.1990).

The Eleventh Circuit has not expressly adopted either standard for forfeiture under § 881(a)(7). *United States v. Approximately 50 Acres of Real Property etc.,* 920 F.2d 900, 902 (11th Cir.1991) (per curiam). The Eleventh Circuit, however, has recognized that district courts within the Circuit are applying the substantial connection test in actions under § 881(a)(7), thus extending its holding that the test applies in forfeiture actions under 21 U.S.C. § 881(a)(4) and § 881(a)(6). *Id. See also United States v. $121,100.00 in U.S. Currency,* 999 F.2d 1503, 1505 (11th Cir.1993); *United States v. One Single Family Residence at 15603 85th Ave. N.,* 933 F.2d 976, 979 (11th Cir.1991) (applying substantial connection test in forfeiture action under 21 U.S.C. § 881(a)(6)). The court here applies the substantial connection test to § 881(a)(7).

325 (5th Cir. Unit B 1981).[11] Furthermore, evidence supporting probable cause for a forfeiture may be adduced at a state rather than a federal criminal proceeding. *United States v. All Right, Title & Interest in Real Property etc.,* 901 F.2d 288, 292 (2d Cir.1990).

■ The Government is also permitted to use facts learned after the actual seizure. *See United States v. $41,305.00 in Currency & Traveler's Checks,* 802 F.2d 1339, 1343 (11th Cir.1986). It, however, is not allowed to use facts learned after it files the forfeiture action. *United States v. Ninety One Thousand Nine Hundred Sixty Dollars,* 897 F.2d 1457, 1462 (8th Cir.1990).

■ Once probable cause is established, the burden of proof shifts to the claimant to demonstrate by a preponderance of the evidence that he or she is an "innocent owner." *United States v. One 1980 Bertram 58' Motor Yacht,* 876 F.2d 884, 888 (11th Cir.1989); *Single Family Residence,* 803 F.2d at 629.

To succeed, the claimant must first demonstrate that he has standing to file a claim to the property. *United States v. Real Property & Improv. Located at 5000 Palmetto Drive,* 928 F.2d 373, 375 (11th Cir.1991). The claimant may meet this burden by showing that he has an ownership interest in the defendant property. *United States v. Four Million, Two Hundred Fifty–Five Thousand,* 762 F.2d 895, 907 (11th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986).[12] The claimant may then avoid forfeiture by proving that the underlying criminal activities were committed or omitted without his knowledge and consent. 21 U.S.C. § 881(a)(7); *United States v. One Single Family Residence etc.,* 995 F.2d 1558, 1561 (11th Cir.1993); *One Single Family Residence at 15603 85th Avenue,* 933 F.2d at 981.[13]

■ However, a mere conclusory statement of lack of knowledge or consent

**11.** In *Stein v. Reynolds Secur., Inc.,* 667 F.2d 33, 34 (11th Cir.1982), this circuit adopted as binding precedent all decisions issued by any Unit B panel of the Fifth Circuit after October 1, 1981.

**12.** Jenkins' standing is not at issue.

**13.** The court notes that those courts which have examined the innocent owner test are split on the proper interpretation of the statute's express language. *See generally* Lalit K. Loomba, Note, *The Innocent Owner Defense to Real Property Forfeiture Under The Comprehensive Crime Control Act of 1984,* 58 Fordham L.Rev. 471, 478–86 (1989). One school of thought contends that the term "or" must be read in a disjunctive fashion, holding that the innocent owner test in § 881(a)(7) requires a claimant to demonstrate either lack of knowledge *or* a lack of consent, but not a lack of both knowledge *and* consent. *See United States v. 141st St. Corp.,* 911 F.2d 870, 878 (2d Cir. 1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991); *United States v. Parcel of Real Property Known as 6109 Grubb Road,* 886 F.2d 618, 626 (3rd Cir.1989); *United States v. Certain Real Property & Premises,* 710 F.Supp. 46, 50 (E.D.N.Y.1989). The other school of thought argues that a conjunctive test should be applied to the provision. *See United States v. One Parcel of Land, etc.,* 902 F.2d 1443, 1445 (9th Cir.1990) (per curiam).

Moreover, Eleventh Circuit decisions conflict on this issue. In 1991, one panel determined that the "or" provision should be interpreted in a conjunctive manner. *One Single Family Residence at 15603 85th Ave. N.,* 933 F.2d at 981. The next year, however, a panel concluded that

the innocent owner test should be interpreted in a disjunctive manner. *United States v. One Parcel of Real Estate at 1012 Germantown Road,* 963 F.2d 1496, 1503 (11th Cir.1992). In 1993, a panel returned to the 1991 standard, stating that " '[i]nnocent owners are those who have no knowledge of the illegal activities and who have not consented to the illegal activities.' " *One Single Family Residence etc.,* 995 F.2d at 1561 (quoting *One Single Family Residence at 15603 85th Ave. N.,* 933 F.2d at 981).

At trial, Jenkins did not establish himself to be an innocent owner under the more lenient disjunctive standard. The court reserves discussion of how he did not satisfy the "knowledge" element until later in this Memorandum Opinion.

With respect to the "consent" element, however, Jenkins merely denied selling narcotics to anyone and suggested that there are often a number of people in G & G and that they could have sold the CI the cocaine. The court finds that this testimony does not establish that he was an innocent owner who did not consent to the alleged use of G & G to facilitate the sale of narcotics by customers. *One Parcel of Real Estate at 1012 Germantown Road,* 963 F.2d at 1506 (consent is the failure to take all reasonable steps to prevent the illicit use of one's property); *see Austin v. United States,* ––– U.S. –––, –––––––, 113 S.Ct. 2801, 2808–09, 125 L.Ed.2d 488 (1993) ("owner who allows his property to become involved in an offense has been negligent.") (citations omitted).

Therefore, the court finds that it need not express an opinion as to which standard it believes to be the correct standard.

and a mere conclusory denial of the property's involvement in the crime is not sufficient to justify granting a judgment for the defendant property in favor of a claimant. *United States v. Premises Known as 717 So. Woodward St.,* 2 F.3d 529, 533 (3d Cir.1993); *United States v. One Parcel of Property,* 985 F.2d 70, 73 (2d Cir.1993); *United States v. One Parcel of Property Located at 15 Black Ledge Drive,* 897 F.2d 97, 102 (2d Cir.1990). Furthermore, a person convicted in State court of a drug crime cannot subsequently disclaim knowledge of his own involvement in that crime. *All Right, Title & Interest in Real Property etc.,* 901 F.2d at 291–92; *United States v. U.S. Currency in the Amount of $41,807, More or Less,* 795 F.Supp. 540, 545 (E.D.N.Y.1992); *United States v. $144,-600.00, U.S. Currency,* 757 F.Supp. 1342, 1346 (M.D.Fla.1991). A conviction collaterally estops the defendant-claimant from contesting the facts established by it in a subsequent civil proceeding. *United States v. "Monkey",* 725 F.2d 1007, 1010–11 (5th Cir. 1984); *United States v. $31,697.59 Cash,* 665 F.2d 903, 905 (9th Cir.1982); *United States v. $80,080.00 in U.S. Currency,* 779 F.Supp. 169, 172 (N.D.Ga.1991).[14]

■ A trial transcript of the State criminal proceeding provides reasonable grounds to believe that the defendant property was used for an unlawful purpose. *All Right, Title & Interest in Real Property etc.,* 901 F.2d at 292; *see also United States v. One Sharp Photocopier,* 771 F.Supp. 980, 983 (D.Minn.1991); *$144,600.00, U.S. Currency,* 757 F.Supp. at 1346.

In the instant case, the Government presented testimony and evidence at trial which demonstrated: (1) MOD agents and a CI conducted two controlled buys of a total of one gram of cocaine packaged in clear one inch by one inch "zip-loc" bags; (2) the CI identified Jenkins as the man who sold him the cocaine and stated that Jenkins had the cocaine in his pocket; (3) MOD and MCSD agents executed a search warrant at G & G and found seven one inch by one inch "zip-loc" clear bags in Jenkins' pocket containing a total of three grams of cocaine, a total of $1,764 in cash and .38 caliber bullets at various places inside G & G and on Jenkins' person; (4) the cocaine was packaged in a manner identical to that used by drug dealers; (5) the agents also discovered three cigarettes containing six-tenths of a gram of marijuana and a .38 caliber pistol in Jenkins' vehicle parked in front of G & G; (6) Jenkins pled guilty to possession of a controlled substance in State court and forfeited $1,764 to the State of Alabama; and (7) Jenkins admitted to knowingly possessing the cocaine during his guilty plea and on cross-examination at trial.

Based upon the testimony of the witnesses and the evidence presented at trial, the court concludes that the Government has established a reasonable ground for belief that a substantial connection existed between the property in question and an illegal exchange of a controlled substance. *$121,100.00 in U.S. Currency,* 999 F.2d at 1505 (citations omitted). Two controlled buys of cocaine were made in the store and Jenkins was found there with seven zip-loc bags of cocaine in his pockets, packaged in a manner customarily used for sales and in the same manner as was used in the controlled buys. A large amount of cash was found in the store in places other than the cash register and Jenkins agreed to forfeit it to the state as a part of his plea agreement. Marijuana was found in his car, along with a gun, in front of the store.[15]

With probable cause established, the court cannot find that Jenkins has demonstrated by a preponderance of the evidence that he

---

**14.** Therefore, issues resolved in the State's favor at a criminal proceeding may not be challenged by a defendant-claimant in a federal forfeiture suit. *United States v. Schumann,* 861 F.2d 1234, 1237 (11th Cir.1988).

**15.** Jenkins argues that because (1) the white powder-like substance from the two controlled buys was only field tested and (2) he only pled to possession of a controlled substance and not distribution, probable cause does not exist. The court rejects this argument. As previously discussed, in order to justify forfeiture the Government need only establish probable cause, which is less than prima facie proof but more than mere suspicion. *$121,100.00 in U.S. Currency,* 999 F.2d at 1505 (citations omitted); *One Single Family Residence at 15603 85th Ave. N.,* 933 F.2d at 979.

was an "innocent owner." At trial, he merely testified that he never sold drugs, but that he did know that the seven "zip-loc" clear bags in his pocket contained cocaine. As previously discussed, a mere conclusory statement of lack of knowledge or consent is not sufficient to justify granting a judgment for the defendant property. *Premises Known as 717 So. Woodward St.*, 2 F.3d at 533; *One Parcel of Property*, 985 F.2d at 73; *One Parcel of Property Located at 15 Black Ledge Drive*, 897 F.2d at 102. Moreover, at the time he pled guilty in State court Jenkins admitted that he knew that the clear bags in his pocket contained cocaine. The court does not find Jenkins' testimony to be credible.

Therefore, the court concludes that Jenkins has not proven that the underlying criminal activities were committed or omitted without his knowledge and consent, and that he has not met the burden required to establish his innocent owner defense. 21 U.S.C. § 881(a)(7); *One Single Family Residence etc.*, 995 F.2d at 1561; *One Single Family Residence at 15603 85th Ave. N.*, 933 F.2d at 981. *See supra*, n. 11.

### C. The Eighth Amendment— Excessive Fine Clause

■■■ Jenkins contends that, regardless of his inability to establish the "innocent owner" defense, forfeiture of the real property in question, which is valued at approximately $60–65,000, is a violation of the Eighth Amendment's Excessive Fines Clause. In support of his argument, he directs the court to the Supreme Court's decision last term in *Austin v. United States, supra.*

In *Austin*, the Court per Justice Blackmun recognized that civil forfeiture is subject to the limitations of the Eighth Amendment's Excessive Fines Clause. —— U.S. at ——, 113 S.Ct. at 2812. Justice Blackmun, however, declined to establish a test to determine when such forfeiture is excessive and thereby unconstitutional. *Id.* (*citing Yee v. City of Escondido*, —— U.S. ——, ——, 112 S.Ct. 1522, 1534, 118 L.Ed.2d 153 (1992)) ("[p]rudence dictates that we allow the lower courts to consider that question in the first instance.") Similarly, in *Alexander v. United States*, —— U.S. ——, ——, 113 S.Ct. 2766, 2776, 125 L.Ed.2d 441 (1993), Chief Justice Rehnquist writing for the Court, also declined to articulate a test and remanded the case to the Eighth Circuit for it to first consider the issue.[16]

Justice Scalia, however, in his *Austin* concurrence opined that the "relevant inquiry for an excessive forfeiture under § 881 is the relationship of the property to the offense: Was it close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?" —— U.S. at ——, 113 S.Ct. at 2815 (Scalia, J., concurring in part and concurring in judgment). He proposes an "instrumentality" test which analyzes the nexus between the property seized and the crime committed. *See id.* ("[t]he question is not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense.") (emphasis original). The court finds Justice Scalia's test to be well reasoned and will apply it to the case at bar.[17] The

---

**16.** Unlike *Austin*, *Alexander* involved an *in personam* criminal forfeiture not an *in rem* civil forfeiture, so there was no threshold question concerning the applicability of the Eighth Amendment. *Alexander*, —— U.S. at —— n. 4, 113 S.Ct. at 2776 n. 4.

**17.** The Government makes two arguments with regards to the Eighth Amendment issue. First, it contends that because the *Austin* Court did not articulate a test and because the Eleventh Circuit has not addressed the *Austin* decision, this court is bound by *Real Property and Residence at 3097 S.W. 111th Ave.*, 921 F.2d at 1556–57. In that case, the Eleventh Circuit held that the Eighth Amendment proportionality analysis does not apply to civil forfeiture cases. 921 F.2d at 1557.

The court finds that *Real Property and Residence at 3097 S.W. 111th Ave.* is at the very least persuasive authority and therefore, will not apply a proportionality analysis. *But see United States v. Borromeo*, 1 F.3d 219, 221 (4th Cir.1993); *The Supreme Court—Leading Cases*, 107 Harv.L.Rev. 144, 210–11 (1993) ("plain meaning of the Eighth Amendment's language leaves little doubt that a proportionality test is contemplated under the Excessive Fines Clause.").

Next, however, the Government incorrectly argues that *Real Property and Residence at 3097 S.W. 111th Ave.* establishes the appropriate standard for determining a violation of the Eighth Amendment's Excessive Fines Clause, it being that the relevant inquiry is "the 'extent' of forfeiture determined by the facts of each case or, in other words a determination of excessiveness."

court believes that the Eleventh Circuit will either adopt it or a standard that is not inconsistent with it. *See Real Property and Residence at 3097 S.W. 111th Ave.*, 921 F.2d at 1557.[18]

Accordingly, the court finds that the forfeiture of the property in question does not violate the Eighth Amendment's Excessive Fines Clause. The testimony and evidence at trial established that there is probable cause to believe that Jenkins was selling drugs out of his grocery store; that, to use Justice Scalia's language, the relationship of the store to the offense of selling cocaine was close enough to render the grocery store "guilty".[19]

Therefore, the court finds that the forfeiture of the property in question is not excessive under the circumstances.

## CONCLUSION

For the forgoing reasons, the court finds that the real property in question is due to be forfeited to the Government.

A separate order will be entered in accordance with this Memorandum Opinion.

## ORDER

In accordance with the Memorandum Opinion filed contemporaneously herewith, it is hereby ORDERED

1. that judgment be and it is hereby entered declaring the defendant real property forfeited to the United States of America; and

2. that costs are taxed against Claimant George T. Jenkins, for which execution may issue.

---

Pretrial Brief of the United States of America at 10 n. 2.

The court finds the Government's interpretation of *Real Property and Residence at 3097 S.W. 111th Ave.* to be incorrect and its proposed test to be based on circular reasoning. In *Real Property and Residence at 3097 S.W. 111th Ave.*, the Eleventh Circuit did not apply an "extent analysis," but rather merely stated that "[a]lthough section 881(a)(7) does not place an express limit on the extent of real property that is forfeitable, other circuits reaching the issue have recognized that section 881(a)(7) by its explicit and broad terms allows for the forfeiture of entire parcels." 921 F.2d at 1557 (citations omitted)

**18.** To date, no Court of Appeals has accepted Chief Justice Rehnquist's and Justice Blackmun's

invitations to fashion a test. The Fourth Circuit, however, in *Borromeo*, remanded a case to the district court for consideration of the proportionality of the forfeiture in question. 1 F.3d at 221. It held that "[i]n the wake of *Austin*, an inquiry into the proportionality between the value of the [property] sought to forfeited and the amount needed to effectuate the legitimate remedial purposes of the forfeiture would seem to be in order." *Id.*

**19.** If a proportionality analysis were deemed appropriate, the court would consider the fact that a junior high school was in close proximity to the grocery store, when taken with the other evidence, to be sufficient to hold that forfeiture is not excessive.